Case, Petitioner versus the United States Attorney General. Give me one second, counsel, I'll let everyone clear out for you. No, no, you're doing great. Just let everyone clear out. May he please the court. My name is Viswanathan Rudrakumaran. I represent the petitioner, Prasath Navarathnasingam in this case. The case is primarily on credibility, Your Honor. Normally the courts differ to the immigration judge on credibility findings, but that difference   is not a birthright of the immigration judges. Also, when the immigration judge made some error, some procedure requirements, such as whether the immigration judge gave an opportunity to explain the inconsistency or omission, if the immigration judge did not follow certain requirements, then it becomes a legal issue, and then the standard of review is de novo. In this case, Your Honor, the agency made an adverse credibility finding based on three implausible findings and based on three omissions. It is not clear from the BIA opinion, it seems to be the BIA opinion simply rely on the implausibility findings. The BIA said the immigration judge capably made some findings, and the respondent or petitioner offered some alternative explanation, but the BIA did not state whether those alternative explanations for the omissions are valid. It did not say. Then the BIA jumped and said, but the petitioner did not overcome the implausible findings of the agency. So according to the BIA, the BIA made that adverse credibility finding based solely on the implausible findings. The immigration judge made three findings as implausible. The first finding, he said, the applicant said he was subjected to torture, electrocution, etc., etc., but he did not state everything in detail in the application. That was his first reason saying it is implausible. Had he done so, was he subjected to these conditions? He did not say in detail it is implausible. That is a personal conjecture. It has nothing to do with the record. It was his personal experience. So implausibility findings cannot be based on personal perceptions. It should be based on record. So you're saying that when the immigration judge said, for example, it's implausible that he got an exit visa within one day, that there needs to be some other reason for the immigration judge to say that? There needs to be some record evidence to suggest that that would be implausible for the immigration judge to say that. That's what you're saying? Precisely, this issue was addressed by this court in Tang case. In Tang case, the mother was a Chinese official. So the BIA came up and said, it is impossible that she was an official. She would have done these things for her daughter to escape the country. And the court said, there is nothing in the record to state that she did or did not help the daughter to leave, because that was a personal... But counsel, as to the finding that Judge Brasher asked you about, isn't the record evidence that was pointed to by the immigration judge and relied on by the board, that your client seemed to be under constant watch for years on end, and seemed to be someone who they were very concerned of not talking in any way in anything about what happened to him, and somehow was let outside of the country in one day? No. Wasn't that the implausibility? I'm not saying that's true. I'm just saying, wasn't that the implausibility that the IJ was contrasting with the testimony that they got the visa in one day? No, Your Honor. It happens every day. In fact, I have cited cases on page 22 and 23 of my briefs. The courts have said, because sometimes the government gives the visa to get rid of these people out of the country, there are published decisions. Can I ask you a question? So the IJ asked your client, as required, about that, the quote-unquote implausibility, and your client didn't offer any explanation? No, he said, my friend, the agent obtained the passport, and the agent took me to the airport at 10.45. The flight was at 12 o'clock. He took me to some other officer. He took me to the plane. He gave a detailed explanation. This thing happened every day. You know, that's what the smugglers, you pay money, you get the passport within 24 hours. There's nothing in the record say that you cannot get a passport within 24 hours. That's a personal conjecture, Your Honor. So the three reasons. First, he said he did not put everything in detail. So implausible. That cannot be an implausible finding. Then the second thing, as the court asked, he left the country within 24 hours, got the passport within 24 hours. It is implausible. There's nothing in the record say that it is implausible. It happens in the world, Your Honor. People pay money, get the passport, leave the country. And the third thing, he said, okay, you were subjected to all this kind of treatment, torture. You did not have a medical record. He gave an explanation. But that question was not asked to him in the hearing. But in the affidavit, he said, the military asked me not to go to the hospital, so I did not go. And I took some native treatment at home. And the judge said he was kind of condescending. What kind of a native treatment? He only thinks only English treatment can cure these things. That is a personal perception. That cannot be based on the adverse credibility finding. So the three implausible findings made by the judge, none of it, none of it based on the record. Let me ask you this. Is there an injury that one could suffer from torture that would be implausible that they treated with turmeric or, you know, other oils? Your Honor, it's quite possible. I am not an expert on the native treatment. I know, but I understand it's possible, although that doesn't seem to be the standard for rejecting findings. The standard is whether it compels reversal. But my question is, is there, let's say, God forbid, someone's arm was chopped off. And they came and testified and said, I treated that with oils and turmeric. Would that be implausible? No, I wouldn't say that. Because in many other parts in Africa and Asia, that's the only treatment people have. They don't have the English treatment, Your Honor. They don't have hospital to surgery. Many parts of the world, you know, they put some bandage or something like that. That's what happens in most of the places. What about the failure to corroborate that when you're in America? So someone had been in America for a significant amount of time. Isn't there at least a doctor to say my arm was chopped off or show that your arm had been chopped off? But he was detained. He was in detention. He's under the custody of the ICE. He was also living there to have the luxury to go to the doctor. He was detained. Where can the detention medical facility do it? I think the day before yesterday, ACLU filed an action against saying all these detention facilities are very abusive environment. What about the inconsistency in his organizing and tending the protest in 2018 for missing Tamil Sagar? Regarding his position, Your Honor, that he did not have problems because of organizing these events. He repeatedly said he had the problem because they took his picture at the function at the protest. He says he wasn't there. He went and dropped his aunt. Right. Then he went there to pick her up. Right. And he said during that time, army would have taken the picture. That's quite possible, Your Honor. Again, the possibility isn't the standard. It's does it compel reversal? How does it compel reversal where he said, I dropped my aunt off and went to pray at a temple when there is contrary evidence to suggest that not only did he attend, but he helped organize it? Those are the evidence from the third party, Your Honor. That's only two people. Right. That's inconsistent. That's inconsistent, Your Honor. But here, we come to the basic. Here, even the immigration judge, he did not say that based on this one inconsistency, I find him not credible. He said all these things. Had he said, OK, only this one inconsistency, he's not credible. He did not state that. He said that taking all these omissions and impossibilities, I made a negative credibility finding. And the BIA also did not state that. Had the BIA said, we forget everything, only based on this particular instance, we make an adverse credibility finding. Had the BIA said, maybe probably it might survive. But the BIA did not say either. The BIA said on the impossibility finding, Your Honor. Before the court, the court has to adjudicate whether these impossible findings are valid or not. If they are not valid, then the adverse credibility finding should be vacated. What about the inconsistency between his testimony that his mother received, I think, multiple or family received multiple death threats, and yet the mother didn't mention anything in her letter regarding that?  The first one is the mother. Three things. She put it as a constant problem. The second thing, Your Honor, this is a pro se applicant. There was no lawyer. They don't know how to prepare an affidavit, Your Honor. And the third, my response, Your Honor, this is an omission comes from a third party that has less probability on the credibility on the things. But, Counsel, it's also testimony or, I'm sorry, evidence that your client submitted. In other words, you're right that if it comes from the government and it's there, that might go to that point. But your client is the one who submitted this from his own mom. Yeah. But, Your Honor, as I cited in the Second Circuit case law, Your Honor, that's also the applicant submitted the evidence from a third party. But the court said if it comes from a third party, and specifically on the omission side, if it's an inconsistency, it's a different ballgame maybe. When it comes to the omission, the Second Circuit said, Your Honor, that if it comes from a third party that has less probability on the credibility question. Oh, there's no doubt that that's true. But now we're talking about two or three things that seem to add up. And so when you add all these things up, how can we say that it compels, that we're compelled by the record to reverse the credibility finding? My main argument would be, Your Honor, the BIA relied solely on implausible findings. The BIA did not rely on the inconsistency. Where do you see that? I was just looking at the BIA's decision. I don't see the BIA saying we're specifically relying on the implausibility issues as opposed to the inconsistency issues. Where do you see that? On page 3, on page 3, 4, the BIA said, the immigration judge's decision capably described discrepancies and implausible assertions upon which the finding was based. Though the respondent seeks to offer alternative explanation for those discrepancies on appeal, he has not demonstrated that the immigration judge's credibility assessment was based on permissible or implausible view of the evidence. So they're saying, okay, the judge was capable. Capably he made this finding. It says discrepancies and implausible assertions. I'm looking at that sentence you just read from. The immigration judge's decision capably describes the discrepancies, that's inconsistencies, and implausible assertions, which are the implausibilities. Regarding the discrepancies, he said the petitioner offered alternative explanation. The BIA did not say whether I'm accepting this explanation or not. BIA did not address it. BIA said, okay, maybe an alternative explanation, but he has not overcome the implausible findings. That's what the BIA said. I'm not sure that I read that sentence that way, counsel. It seems a very limited reading of an opinion. Maybe. But then the BIA and the agency made the adverse credibility finding based on all these things. We're at the end of our time, counsel, but we're going to hear three minutes of rebuttal from you. Thank you. Thank you. Good morning, counsel. Good morning, Your Honors. May it please the Court, my name is Julia Tyler and I represent the Attorney General in this immigration case. I'd like to just jump in and start responding to some of the things that I heard my petitioner's counsel mention. With regard to what he reviews as the focus of the board, he alleges that the board solely focused on implausibilities. At the outset, I'd like to point out that that is an argument that was raised but for the first time in his reply brief, which is, it's a new and unsupported argument and I would say- Let's put that aside for the moment. Is he right that the BIA's order only relied on the three implausibilities as opposed to the four inconsistencies? No, he's not correct at all. I think it's quite clear, as you pointed out, Your Honor, that the language he's discussing, he's interpreting a very stilted reading of it. It's very clear that the board did refer to discrepancies as well as implausibilities. And what the board was referring to was the fact that just because this is important law that applies at the board level, also here for the court and in the standard of review, is just because somebody can come up with a different explanation post hoc for why they testified a certain way, does not compel the agency's reversal. I'd also point you, Your Honor, to the language at the end of the board decision. This is important because I think that part of his argument was that- counsel's argument was that the board didn't refer to clear error. But in conclusion, this is at the end of the board decision, Respondent has not demonstrated legal or clear factual error in the immigration judge's denial of his applications for asylum withholding of removal and protection under FAT. And I would argue that that subsumes all of it. There's no clear error in the inconsistencies. There's no clear error in the implausibility. Did the board rely specifically on an inconsistency as part of its findings? I think that they were looking generally at the immigration judge's decision was very fulsome and very detailed. And I think that they didn't want to go through specifically every single one of them. But did the board talk about any of them? It seemed to talk about at least one of the inconsistencies. I guess I'm referring to page four of the administrative record, the first full paragraph of the BIA's order. Yet here, comma, the Respondent's corroboration is either general and lacking in detail so as to be of limited help or contains details that are at odds with his own versions of events, such as the aforementioned discrepancy regarding his participation in the October 2008 protest. That refers directly to one of the inconsistencies as one of the discrepancies, correct? It does, Your Honor. And to be perfectly candid, this record is a target-rich environment of inconsistencies and implausibilities. I think actually having reviewed a few thousand board decisions, and I know you've read so many as well, I think what the board was doing was first talking about credibility, then next talking about corroboration. If you look at the beginning of that paragraph, the board is saying, given his concerns and his reasonable concerns, it says, reasonable concerns about his credibility, then he needed to overcome those concerns about his credibility with strong corroborative evidence. I'm sorry, I read that as addressing corroboration. So let's get past that for a second. So your opposing counsel focuses a lot on the implausibility part of it. And what he seems to do is hone in on what seems to be sort of speculation by the immigration judge regarding finding things that are implausible. So, for instance, the passport stating that sort of based on our general experience, someone doesn't go to the airport, get a passport, get a visa, get on a plane, and leave your country. That's just not within our realm of experience, but that there truly is no evidence to suggest that that is contrary to the experience in Sri Lanka. So deal with that. And then I know Judge Bratcher asked another one of those implausibilities as well. Sure. Well, to answer your question most directly, if that was a normal state of events, then I think he would have probably said, we always get passports. Well, I mean, that was his response. I mean, his response was, I mean, to be fair, I mean, he's not speaking on behalf of the government of, you know, that governs this area. He's saying, look, my experience was this is what happened to me. I don't know what the policies are for the government. I don't know how these human traffickers generally work. Right? So one clarification, Your Honor, is that he did not, if you look at the transcript, it would be at the record of page 140. He never mentions the agent until he starts talking about actually going to the airport. So I think I heard my petitioner's counsel refer to using an agent to get the passport, and the judge asked him about getting the passport. He says, I escaped. I went and got that passport in one day. And then he's incredulous. You got that passport even though you're an escaped fugitive. Yes, I got my passport in one day. Sometimes you have to pay a bit more money to get it that quickly. But how were you able if you were someone that had escaped from military custody? I don't know. And I think it's not just whether or not you can get a passport in one day, but his affidavit is just replete with discussions of how he was monitored, he was surveilled, they came to his house, they wanted to know where he was. If he went somewhere for a day, they were knocking on the door and trying to find out where he'd gone. So his story was that he was under constant surveillance, constant monitoring. And yet I think what the judge was saying is, how in the world did you get a government-issued passport in one day and you were able to leave the country without any issues? So one problem I have with that reasoning, and there's some other problems I have with the reasoning, but wouldn't that reasoning apply to literally anyone from Sri Lanka who came to the United States seeking refuge because they were persecuted? The judge could always just say, I can't believe you got here. How did you possibly get here? You were so persecuted. That's so implausible. So they just deny everyone's asylum petitions? Sure. That's an excellent question. I think one difference here is the fact that when you look at his chronology, he was detained, he was released, he was detained, he was released. He escaped. And escaping, I think, is very different from being detained and then being released. And so, you know, again, I would also point out with regard to this, you know, we're talking about what's possible. It's quite possible. He never gave those explanations to the immigration judge. I don't think he has a good explanation. And I think that a lot of what was presented to the board is also being presented here, arguments of counsel, and they're not evidence. I would also, if I could turn quickly to the mistreatment that he experienced and let's call it the other implausibility. He claimed that he had been electrocuted, beaten repeatedly, burned, raped. He had been thrown in an iron box. All of these things had happened. And it's not just that he had no scar, no letter. I realize he was detained. However, there are doctors in ICE detention facilities. I think that he could have probably gotten some information from somewhere. It's a lot to ask somebody to get medical information if they're in custody. I mean, that is different than someone who is, you know, out and about and is on bond or hasn't been detained in immigration custody to be able to get that. And everyone can see that. Again, it's the confluence of the complete and utter lack of supporting evidence. Well, so let's go there for a second. So your opposing counsel says the finding by both the board and the immigration judge is that collectively all these together create an adverse credibility finding. And if one or two of the dominoes fall, do the rest of them fall, I guess is the question. Do we then send it back to say, well, a couple of these seem wrong and you've told us that it's collectively okay, so tell us if this individually is okay to find an adverse credibility finding? How do you respond to that argument? That's an excellent question. And I think this court in 2017 in Selvaratnam noted that even a small number of inconsistencies can justify an adverse credibility finding. There's no doubt that it can. In fact, I'm pretty certain that the 2018 one alone would have been sufficient for it. Absolutely. That's not the question, though. The question is, did the board adopting the IJ make its credibility determination based on the collective of all seven of these things, the four inconsistencies and the three plausibilities together, and the failure of one, does that create at least a question in our mind of whether the board would have reached the same conclusion but for that? And I'll ask one question on top of that. Do we review this in a harmless setting, or do we look at this as, well, the agency gets to make this finding, they've told us it's collective, and so they've got to make the call? Well, we know that the standard of review is incredibly deferential, and we know in addition that this court is tasked with reviewing the record in the light most favorable to the agency's decision and drawing all reasonable inferences in favor of the agency's decision. I do not think that remand would be necessary if even several of the inconsistencies turned out. I mean, for example, I didn't discuss in my brief the one about whether somebody was talking to the mother on the phone or was talking to her more directly. I do think that there are sort of a hierarchy of inconsistencies. Some of these are massive. Whether or not he participated in the 2018 protest, and then clearly his aunt. So your point is, just if I could summarize it, your point is the standard of review is we'd have to find that it compels reversal, and we'd have to look to see if the two are sort of minor or don't overwhelm or overcome the rest of them, as opposed to looking at this holistically. Well, again, substantial evidence, and substantial evidence is, is there evidence in the record that no reasonable adjudicator could come to the decision that the agency came to? I guess, so here's the answer to this. So we're reviewing an administrative agency's determination. Part of administrative law is the idea that agencies can reach the same determination and we're not really quibbling with the end result, but they just have to do it with the right process, right? Like that's 90% of our administrative law cases are about just making the agency follow the right process. Here it seems several of these things that the I.J. said are wrong. Should we not just say, look, we don't know what the agency would do now that we've pointed out the I.J.'s errors. Should we just send it back to the agency and say, you do it again. You tell us, maybe you'll reach the same decision, maybe you'll reach a different decision. We don't know, but part of the process is that you have to do this right, so just do it again. I think it partially may defend on what process you were referring to. I do not think that the Supreme Court in Ming Dai made very, very clear that the substantial evidence standard means looking at the record. It's not about checking boxes. They did check boxes. He got a notice to appear. He had an immigration hearing. They read all of his documents. He got an appeal to the board. When I talk about, when I'm thinking about process. Well, here's the way in which, yeah, I mean, I understand your point. I mean, here's the process I'm thinking of is that we ultimately don't get to decide whether this person gets asylum or not. The administrative agency does. They've told us that they've denied him asylum for reasons that at least a few of them seem wrong. I don't know what they would do if they were limited to the reasons that are right, right? I mean, this would be a different case, I think, had the only reason they given been the protest, for example. But that's not the only reason they gave. So I don't know. Maybe they would say that the protest isn't that important. I have no idea. I don't think that the substantial evidence test has anything to do with taking one thing out of the calculus and then because they looked at things in their totality, wondering whether all that adds up to a totality. I think that the substantial evidence test means that looking at the record, is this evidence compelling us to come to the contrary conclusion? And that contrary conclusion is that the agency got this wrong. And, you know, I would just highlight, in addition to the implausibilities, you know, we're talking about massive omissions. We're talking about getting back to, for example, the injuries that he sustained and all the torture that he sustained. Not a single one of the letters that he submitted discusses any of that. So here's a question I have about that, which is, so the way the immigration judge viewed that, and I guess the BIA did too, is sort of an implausibility. Like this doesn't seem credible to us that you suffer these injuries if you have no medical records and there's nothing on your body. Why isn't that not an implausibility, but it's just a failure for the petitioner to satisfy his burden to prove past persecution by substantial evidence? Like why does that go to credibility instead of just saying you didn't give us enough evidence to satisfy your burden? I think there's different ways to interpret it. The construct that they provided was that it's implausible that these horrible things could have happened to you, and there's no evidence and there's no discussion and there's not a shred of corroboration. And I agree with you, Your Honor, that it's very difficult, especially during COVID or whatever, to get any kind of physical evidence. Then again, he was in 11 countries before he got here, and he could have probably gotten some kind of evidence there as well. Is the answer to that question not that the implausibility or the inconsistency was that he said he relied only on these native medical treatments and did not seek anything for these very, very severe things? Wasn't that the implausibility? Not that he didn't provide medical records, which I agree goes to the corroborative aspect of it, but instead that he said, no, no, no, the only way I treated these horrible things after six years of consistent torture was that I used oil and spices and this other stuff. I think that's definitely part of the mix that the immigration judge was addressing. But it's also important to remember it's corroboration in that there's no medical evidence whatsoever. Two, there's no support in any of the letters that has any specificity whatsoever. Three of the letters used the same, I don't remember what it was, extreme assault or severe assault. Three of the letters referred to it only as severe assault. The mother made no mention of him being harmed at all. The social security or the social services organization made no mention at all. The other point is he went through all these other countries. He complained of having pain. You know, I'm trying to figure out why after all of this, he was electrocuted, burned, that he would not have been able to obtain some, wouldn't have obtained some treatment. That's a lot. Counsel, I think we're past our time. Does anybody have any questions? Judge Hull, do you have anything? Thank you, counsel. Thank you. Counsel, you have three minutes. Yes, thank you. With respect to corroboration, Your Honor, in matter of SMJ, the BIA said the IJ should identify a particular evidence. We cannot simply say there is no medical evidence. IJ should have identified a particular evidence, saying that evidence was in existence, but you did not produce. Because he said he did not go to the hospital, so where can he get medical evidence? In matter of SMJ, the BIA said. I have a record question. Once he got out of detention, he said he was in detention six years, correct? Yes, Your Honor. And what was the time period when he got out of detention until he got on the plane and left Sri Lanka? How long was that? Four years. Four years? From 2009 to 2015, he was in detention. Okay. And so why doesn't he have at least some document that he sought medical attention during that period of time? I know he says, well, they warned me not to go to the doctor, okay? That I shouldn't go to the doctor. Is that his only answer? No. He's got four years. He could have had somebody take a photograph of a burn or what they did. I mean, we see these cases and they have some evidence from the home country of what happened. Your Honor, we are confusing the thing because we are not here focusing on the torture that happened to him from 2009 to 2015. Here we are focusing on the torture that happened in 2018 after he attended the protest. So whatever happened to him 2009 to 2015, it's not his basis and it's not before this court. The torture we are talking about what happened in 2018, Your Honor. So there is nothing. So it's only the detention in 2018? Yes, Your Honor. When was he detained? How long was he in 2018? I'm not sure how many months. It was around six months, right? The crux of the case is not about the 2005 to 2009 to 2015. That is not the crux of the case. That's not the persecution you're talking about, the 2018. That is the crux of the case. Anyway, whatever the case is about, he's got no medical evidence about the six years or the six months, correct? No, Your Honor. The first two responses, Your Honor. First of all, the crux of the case is what happened in 2018. Then the military said don't go to the hospital. I didn't go to the hospital. That's the end of the story. Then after six or seven months, he left the country. The second important thing, the IJ should have asked this question, not Your Honor asking me this question. The proper thing for IJ to ask these questions to him and get an explanation. That is the thing IJ should have done. IJ did not do anything. And even the corroboration analysis also, the mother said six years he was in detention. Then that was dismissed because it was an interested witness not subject to corroboration. But the mother did not say anything about the army was coming to the house. Oh, that is a big problem. So if there's a negative aspect in the corroborative evidence, you take that into account. If there's a positive aspect, you simply dismiss it. It's not fair. Thank you, Counsel. Thank you both. We'll call our next case, J.I.W.